IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 05-cv-02523-LTB-OES

ADT SECURITY SERVICES, INC.,

Plaintiff,

v.

APEX ALARM, LLC; KEITH NELLESEN; TODD PEDERSON; and CHANCE ALLRED,

Defendants.
_____

ORDER
_____

The parties in this action for breach of contract and unfair trade practices, removed here pursuant to 28 U.S.C. §§ 1441 and 1446, proffer ostensibly competing dispute resolution agreements and dispute the proper venue. The plaintiff, ADT Security Services, Inc. ("ADT), moves for remand to state court in Colorado. The defendants, Apex Alarm, LLC ("Apex"), Keith Nellesen, Todd Pederson, and Chance Allred, move for dismissal, arguing that venue lies in Idaho and that, in any event, I lack personal jurisdiction over Messrs. Nellesen and Pederson. The issues are inadequately briefed. For the reasons stated below, I DENY ADT's motion to remand and HOLD IN ABEYANCE the defendants' motions to dismiss, pending further briefing.

**I. Allegations**

The allegations of the Complaint are the following. ADT, a Delaware corporation with principle offices in Florida, vends its electronic security services through dealers, with whom it contracts. On May 24, 2000, ADT entered into a dealer agreement ("Dealer Agreement") with RS&I Security, Inc. ("RS&I"), whereby RS&I agreed, *inter alia*, to sell ADT's services and to

refrain from jeopardizing ADT's intellectual property. Pursuant to an agreement dated December 14, 2000 ("Subcontract"), RS&I retained Apex, of which Messrs. Nellesen and Pederson are owners, to assist its sales of ADT's services. ADT, RS&I and Apex together entered into a confidentiality and audit agreement dated February 10, 2000 ("C&A Agreement"), by which RS&I and Apex agreed to refrain from injuring ADT's proprietary interests and to make certain timely disclosures. The C&A Agreement also prohibits RS&I and Apex from soliciting, advertising to, or receiving money from ADT customers for 25 years after the date of the Agreement.

The parties have provided the three agreements and do not dispute the contents of them. The Dealer Agreement provides, *inter alia*, "Any action or proceeding brought by either party against the other arising out of or relating to this Agreement shall only be brought in a court of competent jurisdiction located in Arapaho (sic) County, Colorado." Dealer Agreement ¶ 17.7. The Subcontract provides, *inter alia*, "Any action or proceeding brought by either party against the other arising out of or relating to this Agreement shall only be brought in a court of competent jurisdiction located in Bonneville County, Idaho." Subcontract ¶ 16.9. A guarantee executed by Messrs. Nellesen and Pederson, attached to the Subcontract as Exhibit B, also requires the parties to resolve their disputes in Idaho. Though the C&A Agreement is expressly governed by the laws of the State of Colorado, it contains no venue provision.

ADT alleges that, after the termination of the Subcontract and C&A Agreement, Apex used ADT proprietary information to lure ADT customers to a competitor. By these exploits Apex allegedly breached the C&A Agreement and the Subcontract. ADT purports to be a third-party beneficiary of the Subcontract, entitled to enforce its terms against Apex and it agents.

ADT also alleges that Apex breached the Dealer Agreement, though Apex's putative obligations under that contract are not demonstrated in the Complaint and none of the defendants is alleged to be a party to it. ADT presses claims for breach of contract, interference with prospective business advantage, intentional interference with contractual relations, unfair trade practices in violation of Colo. Rev. Stat. § 6-1-101 *et seq.*, and civil conspiracy. It seeks money damages and injunctive relief.

ADT here desires enforcement of the forum selection clause from the Dealer Agreement, to which Apex is not a party. Apex asks me to enforce the language from the Subcontract, to which ADT is not a party. The former course would end with remand, the latter, dismissal. If neither provision is enforceable, both ADT's and Apex's motions must be denied; the parties dispute neither the existence of citizenship diversity nor the sufficiency of the amount in controversy for the purposes of 28 U.S.C. § 1332.

**II. Discussion**

The proliferation of motions here betrays captious counsel. In addition to the competing motions to remand and to dismiss, I have already denied a motion by ADT to stay consideration of the defendants' motions to dismiss until I disposed of its subsequently-filed motion to remand and I now have an objection by the defendants to a form of order proffered by ADT with its motion to remand. Both maneuvers amount to litigation of the litigation. Having culled the objection for helpful and relevant argument, I overrule it and turn to the issues at hand.

A motion to remand for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447 must be resolved by reference first to the complaint and notice of removal and second to extraneous materials. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

The burden to establish jurisdiction rests with the defendant. *Id*. Similarly, I resolve a motion to dismiss for improper venue pursuant to Rule 12(b)(3) based first upon the allegations of the complaint and then upon the material record. *See*, *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992), *cert. denied*, U.S. 1021, 113 S. Ct. 658, 121 L. Ed. 2d 584 (1992). The Complaint and Notice of Removal demonstrate diversity jurisdiction and the parties do not dispute the contents or circumstances of the operative documents. It remains, therefore, only to determine the legal effect upon my jurisdiction of the three contracts.

### A.     ADT's Motion to remand

ADT urges three alternative grounds for remand. First, it argues that remand is required no matter which forum selection clause controls, because in any event the parties have waived their right to remove to federal court. Second, it argues that the forum selection clause from the Dealer Agreement is incorporated by reference into the C&A Agreement. Third, it asserts that a "flow down" provision in the Dealer Agreement binds Apex to the forum-selection provision contained in that document.

ADT's waiver argument begs two questions, for which ADT has made no answer: one, whether I have jurisdiction to resolve the forum-selection issue and two, on what ground might I determine that Apex waived the very right for which it specifically contracted. As to the first question, it is axiomatic that I have jurisdiction to determine whether I may exercise jurisdiction over this case. *Oklahoma Tax Com'n v. Graham*, 822 F.2d 951, 955 (10th Cir. 1987), *vacated on other grounds*, 484 U.S. 973, 108 S. Ct. 481, 98 L. Ed. 2d 480 (1987). This determination turns on the very question to which ADT has assumed an answer. Depending on which, if either, clause controls, the appropriate course could be remand, dismissal, or retention of jurisdiction.

As to the second question, Apex's purported acquiescence to resolution of this dispute in Idaho cannot be read to constitute a waiver of its right to remove from Colorado; such a reading of the Subcontract language would render it a nullity. Assuming that Apex waived its right to have substantive disputes resolved in federal courts, the present motions do not pose a substantive dispute. No clear and unequivocal waiver by Apex of its right to remove this case from an improper venue appears in the record. *Regis Associates v. Rank Hotels (Management) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990).

*Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318 (10th Cir. 1997) does not deprive me of jurisdiction to determine the proper venue for this case. The Tenth Circuit in *Excell* affirmed a remand premised upon a forum selection clause, the applicability of which neither party disputed, which provided for resolution of disputes in El Paso County, Colorado. The court held that the clause mandated resolution of the dispute in Colorado state court; the reference to a specific county, rather than a judicial district, indicated that jurisdiction in federal court was precluded. *Id*. at 321. Similarly, in *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342 (10th Cir. 1992), the parties did not dispute the applicability of the considered forum selection clause.

Here, I am confronted with two ostensibly competing forum selection clauses that repose venue in counties of two different states. I agree with the parties that both clauses are mandatory. If either of those clauses controls the parties here, I have no jurisdiction over this lawsuit and must either dismiss or remand, as appropriate. *Excell*, 106 F.3d at 321; *American Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 926 (10th Cir. 2005). ADT's argument begs the very question I must resolve.

5

Contrary to ADT's assertion, that the C&A Agreement, to which ADT and Apex were both parties, is subject to the laws of the state of Colorado avails ADT nothing. *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 501 (10th Cir. 2002).

ADT's incorporation argument is no more helpful. It invokes an integration clause contained within the C&A Agreement, which provides:

> Entire Agreement. This agreement, together with any other related documents specifically referred to in this Agreement, constitutes the entire understanding and agreement of the parties with respect to the subject matter of this Agreement. There shall be no presumption against any party on the ground that such party was responsible for preparing this Agreement or any part hereof.

C&A Agreement ¶ 18. ADT points out that the C&A Agreement specifically refers to the Dealer Agreement on its first page and argues that the forum selection clause from the Dealer Agreement therefore is incorporated by reference into the C&A Agreement, to which ADT and Apex are both parties. However, the reference in the C&A Agreement to the Dealer Agreement follows a prior reference to the Subcontract. Indeed, multiple references to the Subcontract, including particular provisions of it, appear in the C&A Agreement. Following ADT's reasoning, both the Colorado and the Idaho forum selection clauses would be incorporated into the C&A Agreement.

As ADT and Apex cannot have intended to provide for exclusive venue of the same dispute in two different locations, they cannot have intended to incorporate the forum selection clauses into their contract. Courts "refuse to incorporate by reference terms which make a reasonable reading of the contract nonsensical and do not support the parties' reasonable intent." *Habets v. Waste Management, Inc.*, 363 F.3d 378, 383 (5th Cir. 2004). *See also*, *AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777, 781 (8th Cir. 2001).

This muddle results from ADT's attempt to portray an integration clause as a clause of

6

incorporation. *Compare*, *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 665 (7th Cir. 2002). That the presence of an integration clause, such as Paragraph 18 of the C&A Agreement, within a contract limits the terms of the contract to those contained within the document is well-settled in Colorado . *Nelson v. Elway*, 908 P.2d 102 (Colo. 1995), *reh'g denied* (1996).  Had the parties intended to include a forum selection clause in the C&A Agreement or to incorporate a clause from another agreement, they could have done so expressly, but they did not. *Packer v. TDI Systems, Inc.*, 959 F. Supp. 192, 198 (S.D.N.Y. 1997).  *See also*, *DDC Interiors, Inc. v. Dawson Const. Co., Inc.*, 895 F. Supp. 270, 274 (D. Colo. 1995), *aff'd*, 82 F.3d 427 (10th Cir. 1996).

Finally, ADT highlights a provision in the Dealer Agreement that all of RS&I's obligations shall "flow down" to and be binding upon Apex pursuant to the Subcontract.  However, no provision in the Subcontract incorporates the Dealer Agreement or its forum selection clause. Though ADT clearly intended that Apex should be bound by the provisions of the Dealer Agreement, that intention was never made manifest; Apex never acceded to the flow-down or forum-selection provisions of the Dealer Agreement and was not a party to that contract.

### B. Apex's Motion to dismiss

As ADT makes clear in its Complaint, it claims entitlement to enforce the Subcontract as third-party beneficiary.  ADT does not respond to Apex's argument, which finds support in case law, that a forum selection clause restricts a third-party beneficiary to the designated forum when the beneficiary could reasonably have foreseen its designation as the beneficiary of the contract. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *cert. denied*, 464 U.S. 938, 104 S. Ct. 349, 78 L. Ed. 2d 315 (1983), *overruled on other grounds*, *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989);

*Industrial Electronics Corp. of Wisconsin v. iPower Distribution Group, Inc.*, 215 F.3d 677, 680 (7th Cir. 2000); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990); *Acciai Speciali Terni USA, Inc. v. M/V BERANE*, 181 F. Supp. 2d 458, 465 (D. Md. 2002). This rule flows from the principle that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable. *Coastal Steel*, 709 F.2d at 203. Here, ADT expressly contemplated that it would benefit from the Subcontract. It required RS&I to pass along its obligations under the Dealer Agreement to subcontractors. Though RS&I subsequently performed that obligation imperfectly, ADT reasonably foresaw at the time that the benefits of RS&I's subcontracts would accrue to itself.

ADT argues that its claims cannot arise out of or relate to the Subcontract, and the above-cited decisions are thus distinguishable, because Apex's alleged infractions occurred after ADT terminated the C&A Agreement and the Subcontract. However, ADT's claims are predicated upon the argument that Apex's obligations under those two agreements persisted after termination of the agreements. Indeed, if ADT was to take this argument to its logical conclusion, it would concede both its motion for removal and its breach of contract claim.

Federal and Colorado courts generally enforce mandatory forum selection clauses under these circumstance. *Milk 'N' More*, 963 F.2d at 1346; *Vanderbeek v. Vernon Corp.*, 25 P.3d 1242, 1247-1248 (Colo. Ct. App. 2000), *aff'd*, 50 P.3d 866 (Colo. 2002). However, Idaho has chosen by statute to prohibit the enforcement of mandatory forum selection clauses. Idaho Code Ann. § 29-110(1); *Cerami-Kote, Inc. v. Energywave Corp.*, 773 P.2d 1143 (Idaho 1989). Dispositive, then, will be the question whether applicable law requires (or even permits) enforcement of this forum selection clause.

A Federal court sitting in diversity must apply the choice-of-law provisions of the forum state when the choice of law determinations involve the interpretation of contract provisions. *Shearson Lehman Bros., Inc. v. M & L Investments*, 10 F.3d 1510, 1514 (10th Cir. 1993). Colorado has adopted the Restatement (Second) Conflicts of Laws (1971) and applies the law chosen by the parties unless no reasonable basis exists for the parties' choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern. *Hansen v. GAB Business Services, Inc.*, 876 P.2d 112, 113 (Colo. Ct. App. 1994).

Again, I am confronted with competing provisions. The C&A Agreement, which both ADT and Apex signed, provides, "This Agreement shall in all respects be governed by the laws of the State of Colorado applicable to agreements executed and to be wholly performed within the State of Colorado without regard to its conflict of laws provisions." C&A Agreement ¶ 14. The Subcontract provides, "This Agreement shall be construed and enforced in accordance with the laws of the state of Idaho applicable to agreements wholly executed and wholly performed therein." Subcontract ¶ 16.9. Similarly, Messrs. Nellesen's and Pederson's guarantee attendant to the Subcontract states, "This Guarantee shall be construed and enforced in accordance with the laws of the state of Idaho applicable to agreements wholly executed and wholly performed therein."

I cannot, on the materials before me, determine whether I must apply the law of Colorado or of some other jurisdiction. I am persuaded that the parties intended their contractual obligations to be subject to Colorado law. ADT was a party to the C&A Agreement and not the Subcontract. Though the C&A Agreement did not designate a forum, it did expressly provide

that Colorado law controls.  Therefore, ADT could not have intended to be bound by the contrary provision in the Subcontract.  However, it is not clear whether application of Colorado law would be contrary to the fundamental policy of a jurisdiction whose law would otherwise govern; the record is insufficient to indicate what law would apply pursuant to Section 188 of the Restatement in the absence of a choice of law provision.

After I have determined which jurisdiction's laws govern this case, I must next discern whether application of the applicable law would mandate enforcement of the Idaho venue provision.  Idaho's pronouncement that such provisions violate a strong public policy of that state will inform this conclusion.  *See*, *Cerami-Kote*, 773 P.2d at 1147.

The parties shall brief the following narrow questions, with affidavits and other appropriate materials, as necessary: 1) whether the choice of Colorado law is contrary to the fundamental policy of a jurisdiction whose law would otherwise govern, and 2) whether the law of the applicable jurisdiction honors Idaho's prohibition against enforcement of mandatory forum selection clauses.

Accordingly, it is ORDERED that:

1) the defendants' objection to ADT's form of order (Doc 19) is OVERRULED;

2) ADT's motion for remand (Doc 11) is DENIED;

3) the defendants' motion to dismiss pursuant to Rule 12(b)(3) (Doc 6) and Messrs. Nellesen's and Pederson's motion to dismiss pursuant to Rule 12(b)(2) (Doc 8) are HELD IN ABEYANCE;

4) the defendants shall brief the above-framed questions on or before March 24, 2006; and

5) ADT shall brief the above-framed questions on or before April 7, 2006.

Dated: March  13 , 2006, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge