IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.  05-cv-02523-LTB-OES

ADT SECURITY SERVICES, INC.,

Plaintiff,

v.

APEX ALARM, LLC; KEITH NELLESEN; TODD PEDERSON; and CHANCE ALLRED,

Defendants.

_____

MEMORANDUM ORDER AND OPINION
_____

Babcock, C.J.

The defendants, Apex Alarm, LLC ("Apex"), Keith Nellesen, Todd Pederson, and Chance

Allred, move for dismissal for improper venue.  The motion is adequately briefed and oral

argument would not materially aid its resolution.  For the reasons stated below, I GRANT the

motion.  Earlier, I held the motion in abeyance pending supplemental briefing.  A brief recitation

of the history is in order.

The plaintiff, ADT Security Services, Inc. ("ADT) entered into a dealer agreement

("Dealer Agreement") with RS&I Security, Inc. ("RS&I"), not a party to this case, whereby

RS&I agreed, *inter alia*, to sell ADT's services and to refrain from jeopardizing ADT's

intellectual property.  Pursuant to a written agreement ("Subcontract"), RS&I retained Apex, of

which Messrs. Nellesen and Pederson are officers, to assist its sales of ADT's services.  ADT,

RS&I and Apex together entered into a confidentiality and audit agreement ("C&A Agreement"),

by which RS&I and Apex agreed to refrain from injuring ADT's proprietary interests and to make

certain timely disclosures.  The C&A Agreement also prohibits RS&I and Apex from soliciting, advertising to, or receiving money from ADT customers for 25 years after the date of the Agreement.

ADT in this lawsuit alleges that, after termination of Apex's relationship with ADT, the defendants used ADT proprietary information to lure ADT customers to a competitor, thereby breaching the C&A Agreement and the Subcontract, under which ADT claims rights as an intended third party beneficiary.  ADT presses claims for breach of contract, interference with prospective business advantage, intentional interference with contractual relations, unfair trade practices in violation of Colo. Rev. Stat. § 6-1-101 *et seq.*, and civil conspiracy.

The Dealer Agreement expressly subjects itself to Colorado law and provides that ADT and RS&I shall resolve any disputes in Colorado state courts.  Apex was never a party to the Dealer Agreement and I previously denied a motion by ADT, premised upon the Dealer Agreement's forum selection clause, to remand this case to state court in Colorado, whence it originated.  Colorado law governs the C&A Agreement, in which the parties made no forum selection.  The Subcontract is governed by the laws of Idaho and designates Bonneville County, Idaho as the forum for any disputes.  Apex asks me to enforce this designation against ADT.

Motions to dismiss based on forum selection clauses are analyzed as motions to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).  *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992), *cert. denied*, 506 U.S. 1021, 113 S. Ct. 658, 121 L. Ed. 2d 584 (1992).  As I earlier determined, if the selection of Idaho as forum is enforceable, ADT is bound by it because a forum selection clause encumbers a third-party beneficiary who could reasonably have foreseen its designation as beneficiary.  *Coastal Steel Corp. v. Tilghman*

*Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *cert. denied*, 464 U.S. 938, 104 S. Ct. 349, 78 L. Ed. 2d 315 (1983), *overruled on other grounds*, *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989); *Industrial Elecs. Corp. v. iPower Distrib. Group*, 215 F.3d 677, 680 (7th Cir. 2000); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990); *Acciai Speciali Terni USA, Inc. v. M/V Berane*, 181 F. Supp. 2d 458, 465 (D. Md. 2002).

In my earlier order, I noted that Idaho has chosen by statute to prohibit the enforcement of mandatory forum selection clauses. Idaho Code Ann. § 29-110(1); *Cerami-Kote, Inc. v. Energywave Corp.*, 773 P.2d 1143 (Idaho 1989). By contrast, federal and Colorado courts generally enforce mandatory forum selection clauses. *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992); *Vanderbeek v. Vernon Corp.*, 25 P.3d 1242, 1247-1248 (Colo. Ct. App. 2000), *aff'd*, 50 P.3d 866 (Colo. 2002). In light of the parties' selection in the C&A Agreement of Colorado law, I requested supplemental briefing on the questions 1) whether the choice of Colorado law is contrary to the fundamental policy of a jurisdiction whose law would otherwise govern, and 2) whether the law of the applicable jurisdiction honors Idaho's prohibition against enforcement of mandatory forum selection clauses.

The defendants suggest that, in the absence of an effective choice of law, Utah law would control here. They argue that application of Colorado law would not contravene any fundamental policy of Utah and that enforcement of the Idaho designation would not offend Colorado or Utah law. ADT responds that Apex's and RS&I's selection of Idaho law governs this issue.

I did not ask the parties to brief, and the parties did not raise, the specific question whether federal law governs here. The authorities are divided on the question whether

3

enforcement of a forum selection clause is a procedural – governed by federal law – or substantive – governed by state law – matter for purposes of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). The Second, Fifth, and Ninth Circuits refer to federal law when considering motions to dismiss predicated upon forum selection clauses. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990); *International Software Sys. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988). The Third Circuit has applied state law. *General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 357 (3d Cir. 1986). The Fourth Circuit in an unpublished opinion has applied state law without explanation. *Nutter v. New Rents, Inc.*, 1991 WL 193490 (4th Cir. 1991). Other circuits have declined to take a position on the question. *Lambert v. Kysar*, 983 F.2d 1110, 1116 (1st Cir. 1993); *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir. 1990); *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 n.4 (8th Cir. 1999).

The Tenth Circuit has not ruled expressly on this issue. In *Riley*, the court applied without explanation federal standards in enforcing contractual clauses choosing English law and placing venue in Great Britain. *Riley*, 969 F.2d at 956-957. Similarly, in *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 497 n.4 (10th Cir. 2002), noting that on appeal neither party objected, the Tenth Circuit declined to revisit the lower court's application of federal common law to interpretation of a forum selection clause. Consistent with that declination, the court stated that the parties' choice of law provision carried little, if any, weight in interpreting the forum selection clause. *Id*. at 501. In *Milk 'N' More*, the court characterized interpretation of forum selection clauses as a matter of contract law. *Milk 'N' More*, 963 F.2d at 1345. However, it cited United States Supreme Court precedent for its ruling

that forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Id.* at 1346.

The split among the circuits follows the Eleventh Circuit's decision in *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987) and the Supreme Court's affirmance in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). The question in that case was whether to enforce a clause giving exclusive jurisdiction to courts in New York City where the forum state, Alabama, deemed such clauses contrary to public policy. The district court, following Alabama law, refused to enforce the provision. The Eleventh Circuit reversed, holding "that venue in a diversity case is manifestly within the province of federal law." *Stewart Org.*, 810 F.2d at 1068. It ordered the district court to transfer the case to an appropriate court in New York.

Though the Supreme Court affirmed, it narrowed the Eleventh Circuit's holding. Justice Marshall, writing for the majority, framed the issue as "whether a federal court sitting in diversity should apply state or federal law in adjudicating a motion to transfer a case to a venue provided in a contractual forum-selection clause." *Stewart Org.*, 487 U.S. at 24. Thus circumscribed, the problem presented itself as one of interpretation of 28 U.S.C. § 1404(a). Any collision of state and federal law was therefore avoided because, as the majority reasoned, "a district court sitting in diversity must apply a federal statute that controls the issue before the court and that represents a valid exercise of Congress' constitutional powers." *Id.* at 27. Only if no federal statute or Rule covers the point in dispute does the court turn to the question whether *Erie* forfends reference to relevant federal, judge-made law. *Id.* at 27 n.6.

Justice Scalia, alone writing in dissent, pointed out that state contract law, which 28

U.S.C. § 1404 does not preempt, governs the question of a contract's validity. *Ibid* at 36. He contrasted Section 1404 with Section 2 of the Federal Arbitration Act, which expressly endorses the validity of arbitration agreements and thus clearly preempts state law. He concluded that, because Section 1404 is at best ambiguous concerning the enforceability of forum selection clauses, the best course would be to construe it not to encompass the issue, thus avoiding contravention of *Erie*. *Id*. at 38. Finding no other federal statute or Rule governing the validity of forum selection clauses, he further suggested that state law should govern under *Erie*; federal judge-made rules on the issue would encourage forum shopping and result in inequitable administration of the laws. *Id*. at 39-40.

The Eleventh Circuit has not since *Stewart Organization* revisited the question. *But see*, *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 918-919 (11th Cir. 1989) (applying state law to question whether forum selection clause was sufficient to establish personal jurisdiction over party; no federal statute or rule controls issues of personal jurisdiction and use of federal judge-made law would encourage forum shopping).

Some courts have, since *Stewart Organization*, extended the Supreme Court's rule to include dismissals predicated upon forum selection clauses, like that which Apex seeks here. The Ninth Circuit's decision in *Manetti-Farrow* is illustrative. The court in that case acknowledged that the Supreme Court's rule in *Stewart Organization* was confined to motions for transfer pursuant to 28 U.S.C. § 1404(a), but found persuasive the Eleventh Circuit's prior, more comprehensive reasoning that Congress, by enactment of venue statutes and approval of the adoption of Fed. R. Civ. P. 12(b)(3) and 41(b), demonstrated its intention that federal rules should govern venue questions. *Manetti-Farrow*, 858 F.2d at 513. The court further concluded

that this particular venue question – whether the parties' contractual choice of forum controls – is

governed by the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,

92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), under which forum selection clauses are given effect

unless enforcement would contravene a public policy of the forum in which suit is brought or

would seriously inconvenience the parties.  The *Manetti-Farrow* court acknowledged that *The*

*Bremen* was an admiralty case, but determined that its standard applies to forum selection clauses

generally.  *Manetti-Farrow*, 858 F.2d at 512.

On the other hand, the Third Circuit in *General Engineering* disputed the "assumption

that federal courts are bound as a matter of federal law to apply *The Bremen* standard to forum

selection clauses."  *General Eng'g*, 783 F.2d at 356.  Foreshadowing Justice Scalia's sentiments,

the *General Engineering* court explained,

> The construction of contracts is usually a matter of state, not federal, common law.
> Federal courts are able to create federal common law only in those areas where Congress
> or the Constitution has given the courts the authority to develop substantive law, as in
> labor and admiralty, or where strong federal interests are involved, as in cases concerning
> the rights and obligations of the United States.

*Id*.  The court concluded, "The interpretation of forum selection clauses in commercial contracts

is not an area of law that ordinarily requires federal courts to create substantive law."  *Id*. at 357.

It noted that two adoptions of federal standards – in *The Bremen* and in enforcement of the

Arbitration Act – are exceptions over which the Constitution or Congress has recognized the

authority of federal courts to create substantive law.  *Id*.

The Third Circuit decided *General Engineering* before the Supreme Court's decision in

*Stewart Organization*.  In *Instrumentation Associates v. Madsen Electronics (Canada)*, 859 F.2d

4 (3d Cir. 1988), presented with the same question, it gave no indication whether it was inclined

7

to reconsider its ruling in *General Engineering*; it did not rule on the issue because the ostensibly competing bodies of law agreed on enforcement of the parties' forum selection.  In a footnote, it noted that the Supreme Court left the question open, quoted from Justice Scalia's dissent, and quoted from its own ruling in *General Engineering* without elaboration.  *Id*. at 7 & n.5.

The rule of *Stewart Organization* is that enforcement of a forum selection clause via the mechanism of 28 U.S.C. § 1404(a) is a federal question.  I find persuasive the reasoning of the Second, Fifth, and Ninth Circuits that the Supreme Court's rationale will apply with equal force to procedural questions arising under Rule 12(b)(3) and similar provisions; where Congress has authored a statute or authorized a Rule on point, federal law controls.  And though the Tenth Circuit has not stated so expressly, it has indicated that lower district courts should apply federal law and enforce forum selection clauses unless enforcement is unreasonable.  *Milk 'N' More*, 963 F.2d at 1346.

ADT, a Delaware corporation with principal offices in Florida, which contracted with RS&I, an Idaho corporation, has not shown that enforcement would be unreasonable in this case, brought against a Utah limited liability company whose principals reside in Utah.  It does not argue that it would be prejudiced by trial outside Colorado.  Nor does it assert that trial in Idaho would be inherently unfair.  *Riley*, 969 F.2d at 958.

What remains is to determine which of ADT's claims are subject to the forum selection clause of the Subcontract.  The Subcontract provides that "[a]ny action or proceeding brought by either party against the other arising out of or relating to"it shall be brought in Idaho.  ADT's claims are all predicated upon the same alleged conduct, namely that the defendants wrongly employed its proprietary information, in contravention of the Subcontract and C&A Agreement,

to steal its customers.  Non-contract claims that involve the same operative facts as a parallel breach of contract claim fall within the scope of a forum selection clause.  *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993); *Coastal Steel*, 709 F.2d at 203; *Terra Int'l v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997), *cert. denied*, 522 U.S. 1029, 118 S. Ct. 629, 139 L. Ed. 2d 609 (1997).  The Subcontract and C&A Agreement are the basic sources of any duty that the defendants owed to ADT and ADT cannot by artful pleading avoid the resolution of its tort claims in Idaho.  *Coastal Steel*, 709 F.2d at 203; *Terra Int'l*, 119 F.3d at 695.

Accordingly, it is ORDERED that the defendants' motion to dismiss pursuant to Rule 12(b)(3) is GRANTED and judgment shall enter for the defendants on all claims with costs.

Dated: May __9__, 2006, in Denver, Colorado.

BY THE COURT:

__s/Lewis T. Babcock_____
Lewis T. Babcock, Chief Judge